NATIONAL ZINC COMPANY, Inc., a Corporation, and Hartford Accident and Indemnity Company, Petitioners,

v.

E. S. SEABOLT and the State Industrial Commission, Respondents.

No. 36197.

Supreme Court of. Oklahoma.

April 19, 1955.

Original proceeding by National Zinc Company, Inc., a corporation, and its insurance carrier, Hartford Accident & Indemnity Company, to review an award of the State Industrial Commission awarding compensation to respondent E. S. Seabolt. Award sustained.

Covington & Donovan, Tulsa, for petitioners.

John W. Tillman, Fred A. Tillman, Pawhuska, Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, Justice.

This is a proceeding brought by National Zinc Co., Inc., a corporation, and its insurance carrier, Hartford Accident and Indemnity Company, to review an award of the State Industrial Commission awarding compensation to respondent, E. S. Seabolt.

On January 15, 1953, respondent filed his claim for compensation in which he states that on August 21, 1952, while in the employ of petitioner National Zinc Co., Inc., he sustained an accidental injury consisting of an injury to his back resulting in some permanent disability to his body as a whole. The injury occurred when he slipped and fell on the side of a charge car while attempting to climb out of the car.

The trial commissioner to whom the case was assigned for hearing at the close of the evidence in substance found: that on August 21, 1952, respondent while in the em-

ploy of the zinc company sustained an accidental injury arising out of and in the course of his employment resulting in an injury to his back; that as a result of the injury he was temporarily totally disabled from August 23, 1952, to December 1, 1952, less the five day waiting period, when temporary total disability ceased; that he is entitled to compensation for such disability in the sum of $333.33, and that as a further result of said injury he sustained a 20 per cent permanent partial disability to his body as a whole and is entitled to 100 weeks compensation at the rate of $25 per week or a total of $2,500 and entered an award in favor of respondent accordingly which was sustained on appeal to the Commission en banc. .

Petitioners bring the case here to review this award and rely for its vacation on the ground that it is not supported by sufficient evidence and is contrary to law.

In support of his claim respondent testified that he sustained an accidental injury while in the employ of the zinc company on the date and in the manner as stated in his claim. The next day after he sustained his injury he became sick and consulted a doctor who diagnosed his case as appendicitis. He took treatments from the doctor for a short time and at his advice returned to work. He worked for several days but was unable to continue work because of pain in his back. He then notified the foreman of petitioner zinc company that he had sustained an injury on the day above mentioned and requested medical treatment. He told the foreman that he had been advised to go to a doctor at Tulsa for treatment. The foreman agreed and consented that he be treated by such doctor. He called upon such doctor and the doctor examined him and called in consultation several other doctors. He continued the treatment with the Tulsa Doctor until December 2, 1952. The doctor advised him to wear a brace and return to work. He returned to work on the 6th day of December, 1952, and worked with some difficulty until the 13th when he contracted the flu. He was medically treated for such sickness for a period of about 30 days and does not claim compensation during the time he was confined with the flu. Respondent further testified that he had experienced no trouble with his back and was able to do hard manual labor until he sustained his injury but since that time he has not been able to do so. Four different doctors, one of whom was designated by the trial commissioner to examine respondent, examined him and filed their written reports in the case which were admitted in evidence.

Petitioners in their brief state that if the award of the State Industrial Commission is sustained it must be sustained on the report of one of these doctors, a Dr. W, and the report of the doctor designated by the trial commissioner to examine respondent supplemented by the doctor's deposition. Respondent relies upon the evidence of these two doctors to sustain the award. We therefore deem it unnecessary to discuss any of the medical evidence other than the evidence of these two doctors.

Dr. W. in his report states he examined claimant on January 20, 1953. He obtained a case history that respondent while working in a charge car owned by the National Zinc Company sustained an injury while attempting to climb from the car. He accidentally slipped and fell, falling backward against the car thereby sustaining an injury to his back. He was seen by Dr. A who placed him in a brace. However he continued to have pain in the lumbar region, more noticeable in the right lumbar area. Respondent complained of pain or palpation in the lower lumbar region, especially of the sacroiliac. This pain was present on extension of the right leg and upon crossing the right leg. He complained of pain extending down the left thigh to the knee. An x-ray was taken which showed marked arthritic lipping of the third and fourth lumbar vertebrae. There was also marked arthritis scattered over the pelvis region and over both iliac crests. Both sacroiliac joints appeared to be almost completely ankylosed. The doctor then stated his conclusion as follows:

"My conclusions are that this claimant has evidently sustained a fracture to the 4th lumbar vertebra and at the anterosuperior border. There is considerable arthritis present in the 3rd

and 4th lumbar, together with arthritis in the pelvis areas and spondylolisthesis between the 2nd and 3rd lumbar. This claimant is a man 39 years of age, and has at this time, considerable arthritis. This arthritis evidently preceding the injury. Unquestionably there has been an aggravation of this, together with the fact that he has sustained a compression fracture to the upper 4th lumbar. To date, the claimant has not as yet been able to return to work. It is doubtful also, in my opinion whether any further treatment would give the claimant any relief. I believe at this time that he could do only light work and doubt whether he will ever be able to engage in any type of heavy work.

"I would estimate that he has a 50% partial permanent disability to the body as a whole."

The doctor designated by the trial commissioner to examine respondent in his deposition stated: he first saw and examined respondent on March 12, 1953. Upon examination of an x-ray taken in a laboratory under his control he found that respondent had a congenital deformity or spondolysisthesis. Respondent according to the history was not disabled by such deformity but was able to live a normal life and did up until he sustained his injury on August 21, 1952. At the time he examined respondent he was totally permanently disabled and that such disability was due to the injury sustained on the date above mentioned. He could not however state that such disability would be permanent. His condition can be corrected by an operation. It would take about eleven months after the operation to ascertain the extent of permanent disability he would sustain. However if the operation proved successful in his opinion respondent would still have from 12 to 15 per cent permanent disability. The doctor further testified that his disability is partly due to a combination of his previous condition and subsequent injury, and further testifies:

"Q. Would it be possible to separate how much of the disability would be temporary disability, how much the temporary disability would be prior to the accident and how much was caused by the blow? A. Well of course the only thing I have to go on is what the man tells me, and he tells me that he didn't have any trouble with his back before and could do very hard labor at the Zinc Plant without any real trouble with the back. Of course I have to go on the assumption and draw the conclusion that it was the injury that—ah—ah—ah maybe moved that vertebra a little more out of place and has never really gotten it back in place, and the ligaments that have held it steady all these years are overstretched and have not regained the elasticity to hold the vertebrae steady.

"Q. Doctor, if he had not received an injury, would you still consider that he had a disability in the back? A. He might have, he might have, might very definitely as far as I get the history; he didn't have any trouble in his back to amount to anything before the injury, and sometimes they definitely develop. Oh, a comparatively small injury will stir these things up, I don't know why."

It is the contention of petitioners that the evidence of these doctors is insufficient to sustain the finding of the State Industrial Commission that respondent's disability was caused or brought about by the injury sustained on August 21, 1952. And commenting upon the report of Dr. W. they state in their brief that while the doctor estimated respondent's disability at 50 per cent permanent partial disability to the body as a whole he does not state that such disability was caused by the accidental injury sustained on the date above mentioned. While it is true that the doctor does not in exact words directly so state he refers to the case history obtained in which respondent states that prior to the time he sustained his injury he was able to and did hard manual labor and since that time he has not been able to do so; that respondent prior to the injury was to a certain extent afflicted with arthritis and that such condition was aggravated by the injury sustained on August 21, 1952, and that he now has 50 per cent

permanent partial disability to his body as a whole. Considering the report as a whole we think the doctor states sufficient facts from which the Commission might reasonably draw the conclusion that respondent's disability as fixed by the doctor was caused or aggravated and brought about by the accidental injury sustained on the date above mentioned. Bishop's Restaurant, Inc., v. McKim, 208 Okl. 631, 258 P.2d 170; Swift & Co. v. Brown, 202 Okl. 572, 216 P.2d 294.

Petitioners referring to the evidence of the doctor appointed by the trial commissioner to the effect that respondent's disability is due in part to his previous condition and in part to the injury sustained on the date above mentioned states the Commission was in error in finding that respondent's entire disability was caused by the injury and in support thereof cite Schoenfield & Hunter Drilling Co. v. Combs, 167 Okl. 397, 30 P.2d 162; Washita County Gin Co. v. Colbert, 162 Okl. 276, 19 P.2d 1080.

We do not think these authorities applicable. The evidence of the doctors above mentioned considered in connection with the evidence of respondent, we think quite clearly establishes that respondent's previous condition was in no manner disabling; that he was able to and did continue to do hard labor until he sustained his present injury and since that time he has not been able to do so. The evidence of the above doctors when considered as a whole is sufficient to establish that respondent's disability was either caused or aggravated and brought to life by the injury sustained on the date above mentioned.

 We have heretofore held that an accidental injury sustained by a workman engaged in a hazardous occupation within the Workmen's Compensation Act, 85 O.S. 1951 § 1 et seq., which aggravates or produces activity of a latent or dormant disease, thus creating a disability which did not previously exist, is compensable. United States Gypsum Co. v. Martin, 206 Okl. 246, 242 P.2d 730; McCoy Tree Surgery Co. v. Baty, 207 Okl. 285, 249 P.2d 409. In Bishop's Restaurant, Inc., v. McKim, supra [208 Okl. 631, 258 P.2d 172], and cases therein cited we held:

"Whether a disability is attributable to an injury or other cause is a question of fact to be determined by the State Industrial Commission from the competent evidence adduced. Its determination of this fact will not be disturbed where reasonably supported by medical testimony."

There is medical evidence to the effect that no part of respondent's disability was caused by his injury but was due entirely to his previous condition.

While the evidence is in conflict the evidence of the doctors above mentioned in connection with the evidence of respondent is sufficient to sustain the findings of the Commission and the award based thereon.

Award sustained.